IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-03105-PAB-KAS

ACUITY, a mutual insurance company,

Plaintiff,

v.

KINSALE INSURANCE COMPANY,

Defendant.

_____

**ORDER**
_____

This matter comes before the Court on Kinsale Insurance Company's Partial

Motion to Dismiss [Docket No. 12].  Plaintiff Acuity filed a response, Docket No. 24, and

defendant Kinsale Insurance Company ("Kinsale") filed a reply.  Docket No. 33.  The

Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I.  BACKGROUND[1]

Monarch Stucco, Inc. ("Monarch"), a Colorado corporation, was hired by GH

Phipps Construction Company ("Phipps"), a general contractor, as a subcontractor to

perform certain stucco work for the construction of a retirement community in

---

[1] The following facts are taken from Acuity's complaint, Docket No. 3, and are
presumed true for the purpose of ruling on Kinsale's motion to dismiss.  Acuity has filed
two copies of the complaint: a redacted copy has been filed without restrictions, Docket
No. 1, and an unredacted copy has been filed under a level one restriction.  Docket No.
3; Docket No. 34 (order by Magistrate Judge Kathryn Starnella granting leave to file
unredacted complaint under level one restriction).  The Court cannot discuss the merits
of the motion to dismiss without referencing the redacted parts of Acuity's complaint.
Acuity has not asked the Court to restrict public access to the Court's order, so the
Court has not done so.

Lakewood, Colorado.  Docket No. 3 at 3, ¶ 11.  BMSH I Lakewood CO LLC ("BMSH"),
the project owner, brought an arbitration action against Phipps alleging construction
defect claims involving failures of the building "envelope systems."  *Id.*, ¶ 12.  Phipps, in
turn, asserted third-party claims in the arbitration action against Monarch.  *Id.*  Phipps'
claims against Monarch related to allegations of defective and cracking stucco work that
resulted in property damage (including loss of use) that was continuous, progressive,
indivisible, and necessitated extensive repairs to fifteen independent living buildings.
*Id.*, ¶ 13.  Monarch was insured under a commercial general liability insurance policy
issued by Acuity from September 12, 2016 to September 5, 2018 (the "Acuity policy").
*Id.* at 4, ¶ 15.  Monarch was insured under a commercial general liability insurance
policy issued by National Specialty Insurance Company ("National") from September 5,
2018 to September 5, 2020.  *Id.*, ¶ 16.  Finally, Monarch was insured under a
commercial general liability insurance policy issued by Kinsale from September 5, 2020
to September 5, 2022 (the "Kinsale policy").  *Id.*, ¶ 17.  Phipps' claims against Monarch
spanned all three carriers' policy periods.  *Id.*, ¶ 18.  Accordingly, Phipps' claims against
Monarch rendered the three carriers co-indemnitors of a single, joint insured, and each
carrier had "time on the risk."  *Id.*, ¶ 19.

On August 9, 2023, BMSH, Phipps, Monarch, Acuity, National, and Kinsale
attended a settlement conference.  *Id.*, ¶¶ 20–22.  Kinsale did not participate fully in the
settlement negotiations.  *Id.* at 4, ¶¶ 20–23.  During the negotiations, Kinsale refused to
contribute any payment to settle Phipps' claims against Monarch in an amount
proportional to the work covered by the Kinsale policy.  *Id.* at 6, 8, 10, ¶¶ 35, 43, 61, 62.
Despite Kinsale's non-participation, Acuity and National fronted the costs and benefits

owed to Monarch under the Kinsale policy in order to settle the claims against Monarch. *Id.* at 10, ¶ 60.

Acuity brings claims for contribution, breach of contract, common law bad faith, and statutory bad faith to recover the costs and benefits Acuity fronted to Monarch that were owed by Kinsale. *Id.* at 9–16, ¶¶ 54–103. Acuity also seeks a declaratory judgment that it is entitled to contribution from Kinsale. *Id.* at 7–9, ¶¶ 40–53.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). A court, however, does not need to accept conclusory allegations. *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("[W]e are not bound by conclusory allegations, unwarranted inferences, or legal conclusions.").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations

and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191 (quotations omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson*, 534 F.3d at 1286 (alterations omitted).

## III.  ANALYSIS

Kinsale seeks to dismiss Acuity's claims for breach of contract, common law bad faith, and statutory bad faith, as well as Acuity's request for a declaratory judgment. Docket No. 12 at 1.  Kinsale does not seek to dismiss Acuity's claim for contribution.  *Id.* The Court will first consider Kinsale's arguments that Acuity's breach of contract claim should be dismissed.

### A.  <u>Breach of Contract</u>

Kinsale argues that Acuity's breach of contract claim should be dismissed for three reasons: (1) Acuity does not have privity of contract to the Kinsale insurance policy; (2) Acuity is not a third-party beneficiary of the Kinsale policy and cannot enforce its terms; and (3) Acuity's breach of contract claim is duplicative of its claim for contribution.[2]  *Id.* at 5–6.

---

[2] Kinsale does not argue that Acuity's allegations fail to allege a claim for breach of contract by Monarch against Kinsale, and the Court will not consider that issue.  *See Id.* at 5–6.

Kinsale maintains that, "[g]enerally, only parties to a contract may seek to enforce its terms." *Id.* at 4 (quoting *Bewley v. Semler*, 432 P.3d 582, 586–87 (Colo. 2018)) (citing *Forest v. City Stapleton Inc. v. Rogers*, 393 P.3d 487, 490 (Colo. 2017) ("Privity of contract between parties has long been a touchstone of contract causes of action"). "In other words, a party must have privity of contract to sue for breach of that contract." *Id.* at 4–5 (quoting *Bewley*, 432 P.3d at 586–87)). Kinsale asserts that, "[b]ecause the Complaint does not allege any contract between Acuity and Kinsale, nor does the Complaint allege Acuity was assigned Monarch's contract benefits, Acuity lacks privity of contract to assert a breach of contract claim against Kinsale." *Id.* at 5.

Acuity responds that Kinsale's privity argument fails because it has plausibly alleged that Monarch assigned to Acuity its breach of contract claim. Docket No. 24 at 9. Acuity argues that, through the terms of Monarch's insurance policy with Acuity, Monarch assigned to Acuity its breach of contract claim against Kinsale due to Kinsale's failure to contribute to the settlement payment. *Id.* Acuity states that, "[u]nder the heading 'TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US,' Monarch agreed as follows: 'If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us.'"[3]

---

[3] The Court finds that it may consider the terms of the Acuity policy in resolving Kinsale's motion to dismiss. "[I]n general, a motion to dismiss should be converted to a summary judgment motion if a party submits, and the district court considers, materials outside the pleadings." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (citation omitted). "However, notwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, 'the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)). The Acuity policy is referenced in the complaint, attached to the complaint, Docket No. 1-3, and is central to Acuity's claims against Kinsale. Furthermore, in its

*Id.* (quoting Docket No. 1-3 at 151).  Acuity argues that this provision is self-executing

and that any of Monarch's claims against Kinsale, including for breach of contract, were

transferred to Acuity when it paid Kinsale's alleged portion of the settlement agreement

to Phipps.  *Id.* at 9–10.

Kinsale replies that the so-called transfer of rights provision in the Acuity policy is

really a subrogation clause and that subrogation clauses are distinct from contractual

assignments of rights under Colorado law.[4]  Docket No. 33 at 4–5 (citing *W. Cas. &*

*Surety Co. v. Bowling*, 565 P.2d 970, 971 (Colo. App. 1977)).  Kinsale argues that the

clause does not entitle Acuity to bring a breach of contract claim against Kinsale.  *Id.*

The Court will first consider whether the transfer of rights language in the Acuity

policy is a subrogation clause or is an assignment of rights.  "'Subrogation' is the

substitution of another person in place of the creditor to whose rights he or she

succeeds in relation to the debt, and gives to the substitute all the rights, priorities,

remedies, liens, and securities of the person for whom he or she is substituted."  16

*Couch on Ins.* § 222:5; *see also Zurich Am. Ins. Co. v. Dillon Companies, LLC*, 595 F.

Supp. 3d 1003, 1006 (D. Colo. 2022) ("Subrogation is defined as the 'substitution of one

person for another; that is, one person is allowed to stand in the shoes of another and

assert that person's rights against the defendant.'" (quoting *Am. Fam. Mut. Ins. Co. v.*

---

reply, Kinsale contests the significance of this provision of the Acuity policy, but does
not contest the authenticity of the policy.  *See* Docket No. 33 at 4.  Therefore, the Court
will consider the Acuity policy in resolving the motion to dismiss and will not convert the
motion to a motion for summary judgment.

[4] Both parties assume Colorado law applies in this case.  *See* Docket No. 12 at
4; Docket No. 24 at 7.  Accordingly, the Court will apply Colorado law.  *Grynberg v.*
*Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments
assume that Colorado law applies, we will proceed under the same assumption.").

*DeWitt*, 218 P.3d 318, 323 (Colo. 2009)).  Subrogation prevents a party who has failed to pay its debts from receiving a "windfall" by allowing the party who paid off the debt to pursue the debtor for payment.  *Zurich*, 595 F. Supp. 3d at 1006 (citation omitted). While subrogation is generally considered an equitable remedy, it can also be a right provided for by contract.  *Id.*; 16 *Couch on Ins.* § 222:20 ("A distinction is sometimes made between legal and conventional subrogation; legal subrogation being that which arises by operation of law, while conventional subrogation is that which arises by convention or the contract of the parties.").  The parties debate whether the transfer of rights provision operates as a subrogation clause or as an assignment of rights.  "The theoretical distinction between assignment and subrogation is that subrogation presupposes actual payment and satisfaction of a debt or claim to which the payor is subrogated, whereas under an assignment of a right or claim, the whole of the right or claim is assigned.  In essence, while subrogation is a designation of proceeds recovered from a wrongdoer, an assignment transfers the entire cause of action to the insurer."  16 *Couch on Ins.* § 222:53 (footnotes omitted).

In interpreting the terms of Acuity's insurance policy with Monarch, the Court's "primary goal is to give effect to the parties' intent."  *French v. Centura Health Corp.*, 509 P.3d 443, 449 (Colo. 2022).  "The parties' intent is primarily determined from the language of the instrument itself."  *Id.* (citing *Ad Two, Inc. v. City & Cnty. of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 376 (Colo. 2000)).  In determining the parties' intent, the court examines the instrument's language and construes the language in harmony with the plain and generally accepted meaning of the words employed.  *Id.*

Acuity's assignment arguments are based on language contained in Acuity's insurance policy with Monarch under the section titled "COMMON POLICY CONDITIONS."  Docket No. 1-3 at 100.  Section J of the common policy conditions is titled "TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US."  *Id.* at 151.  Subsection 2 of section J, "Applicable to Liability coverage," includes the following language:

> If the insured has rights to recover all or part of any payment we have made under this Coverage Part,[5] those rights are transferred to us.  The insured must do nothing after loss to impair them.  At our request, the insured will bring *suit* or transfer those rights to us and help us enforce them.  This condition does not apply to Medical Expenses Coverage.

*Id.* at 151, § J, ¶ 2.  Considering the language of this provision of the Acuity policy, it is only applicable if Acuity has already made a payment.  *Id.* ("payment we have made").  Second, the rights being transferred are only those "to recover all or part of" the payment made by Acuity.  *Id.* at 152.  There is no language in the provision that indicates that Monarch is assigning any rights other than the right to recover payment, and the provision does not purport to transfer the entirety of Monarch's claims against another party.  16 *Couch on Ins.* § 222:53 ("subrogation presupposes actual payment and satisfaction of a debt . . . whereas under an assignment of a right or claim, the whole of the right or claim is assigned.").  As such, this policy language defines a subrogation relationship, and not an assignment.  *See Zurich*, 595 F. Supp. 3d at 1006; 16 *Couch on Ins.* § 222:5.

---

[5] The parties do not discuss what is included in "this Coverage Part," although it appears to include the entirety of Acuity's business owner's insurance policy with Monarch.  *See* Docket No. 1-3 at 85–86.

Nevertheless, Kinsale's argument that the provision in the Acuity policy is a subrogation clause, and not an assignment of Monarch's breach of contract claim, is a distinction without a difference as to the breach of contract claim.  Kinsale argues that Acuity lacks privity of contract to Kinsale's insurance policy with Monarch and, therefore, cannot assert Monarch's breach of contract claim.  Docket No. 33 at 4–5.  However, subrogation excuses a lack of privity.  Subrogation allows a party without privity, but who has paid the debt owed by the debtor, to be substituted for the party with privity and to whom the debt is owed.  *See Zurich*, 595 F. Supp. 3d at 1006 ("Subrogation is defined as the substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person's rights against the defendant." (citation and quotation omitted)); 16 *Couch on Ins.* § 222:5; *Elec. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 346 F. Supp. 2d 958, 963–64 (N.D. Ill. 2004) ("Continental, however, is contractually subrogated to ComEd's breach of contract claim.  The subrogation clause in Continental's insurance policy transferred to Continental ComEd's 'rights to recover all or part of any payment' made by Continental.  Continental has paid part of the Vance judgment, and ComEd's breach of contract claim against National Union is a right to recover part of that payment.").  Acuity is subrogated to Monarch's breach of contract claim against Kinsale for Kinsale's alleged failure to pay its share of the settlement because Monarch's breach of contract claim is a right to recover the debt owed to Monarch by Kinsale on the Phipps settlement, which Acuity paid.[6]

---

[6] The Court declines to review the parties' arguments regarding Acuity's third-party beneficiary status as to Acuity's breach of contract claim because Acuity may pursue the breach of contract claim without being a third-party beneficiary.

Kinsale argues that Acuity's breach of contract claim is duplicative of Acuity's claim against Kinsale for contribution. "Federal courts have dismissed claims pursuant to Fed. R. Civ. Pro. 12(b)(6) when those claims are duplicative of other claims in the suit." *Doe through Doe v. Brighton Sch. Dist. 27J*, 612 F. Supp. 3d 1205, 1218 (D. Colo. 2020) (quoting *Sw. Re, Inc. v. G.B. Investments Reinsurance Co.*, 2011 WL 13114921, at *1 (D.N.M. June 17, 2011) (collecting cases)). Claims are duplicative when they are "substantially the same" as other claims in the suit. *Sw. Re, Inc.*, 2011 WL 13114921, at *2 (citing *Van Vliet v. Cole Taylor Bank*, 2011 WL 148059, at *2 (N.D. Ill. Jan. 18, 2011) (citing *Norfleet v. Stroger*, 297 F. App'x. 538, 540 (7th Cir. 2008) (unpublished))). "They may also be duplicative where the plaintiff would not be able to recover damages under the duplicative theory that are not available under the other theories." *Id.* (citing *Greenhorn v. Marriott Int'l, Inc.*, 258 F. Supp. 2d 1249, 1260–61 (D. Kan. 2003)). "If the substance of the claim is already asserted in another claim, then the second claim is duplicative." *Id.* (citations omitted). Courts may also "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter" pursuant to Federal Rule of Civil Procedure 12(f). Fed. R. Civ. P. 12(f). However, Federal Rule of Civil Procedure 8 allows a party to plead alternative theories of liability. Fed. R. Civ. P. 8(d)(2).

Kinsale argues that, "[s]ince Colorado permits an equitable contribution claim as a means of apportioning loss between two or more insurers who cover the same risk, the breach of contract claim is duplicative of the contribution claim and should be dismissed." Docket No. 12 at 6 (citing *Cont'l W. Ins. Co. v. Colony Ins. Co.*, No. 13-cv-01425, 69 F.Supp.3d 1075, 1085 (D. Colo. Sept. 19, 2014)). Acuity responds that its

breach of contract claim is not duplicative of its claim for contribution because the two claims have distinct elements, with different burdens of proof.  Docket No. 24 at 10–11.

The Court finds that Acuity's claims for breach of contract (claim 3) and contribution (claim 2) are distinct.  Acuity's contribution claim is based on Kinsale's legal obligations to Acuity, whereas Acuity's breach of contract claim is premised on Kinsale's legal obligations to Monarch.  These claims have separate elements.  The elements of a breach of contract claim are "(1) the existence of a contract, (2) the plaintiff's performance of the contract or justification for nonperformance, (3) the defendant's failure to perform the contract, and (4) the plaintiff's damages as a result of the defendant's failure to perform the contract."  *Univ. of Denver v. Doe*, 547 P.3d 1129, 1139 (Colo. 2024).  Whereas, for a contribution claim, a "participating insurer is entitled to equitable contribution from a non-participating insurer" if: (1) "both [insurers] hav[e] a duty to defend," (2) "the former provides a complete defense to an insured," and (3) the defense is "against a common risk . . . arising throughout the successive coverage periods of both insurers."  *Certain Underwriters at Lloyd's, London v. Hartford Accident & Indem. Co.*, No. 18-cv-01896-CMA-NYW, 2019 WL 3574445, at *12 (D. Colo. Aug. 5, 2019) (quoting *Cont'l W. Ins. Co*, 65 F. Supp. 3d at 1084) (citing *Am. Builders Ins. Co. v. ProBuilders Specialty Ins. Co., RRG*, No. 16-cv-1832-WJM-CBS, 2017 WL 4856860, at *7 (D. Colo. June 30, 2017); *Allstate Ins. Co. v. W. Am. Ins. Co.*, No. 09-cv-00967-RBJ-MJW, 2011 WL 11065655, at *3 (D. Colo. Nov. 21, 2011)).  Given the early stage of this litigation and the ability of Acuity to pursue alternate theories of liability under Federal Rule of Civil Procedure 8, the Court will not dismiss Acuity's breach of contract claim as duplicative of its contribution claim.

Accordingly, the Court will deny that part of Kinsale's motion seeking dismissal of Acuity's breach of contract claim.

### B. Common Law Bad Faith

Acuity brings a claim for common law bad faith based on Kinsale's breach of its insurance contract with Monarch.  Docket No. 3 at 13–15, ¶¶ 87–94.  In particular, Acuity alleges that "Kinsale owed duties arising from its contract's implied covenant of good faith and fair dealing, under which Kinsale covenanted that it would, in good faith and in the exercise of fair dealing, deal fairly and honestly under the terms of its policy issued to Monarch, faithfully perform its duties, and do nothing to impair, interfere with, hinder, or potentially injure any rights to receipt of benefits under that policy."  *Id.* at 14, ¶ 88.  Acuity claims that "Kinsale breached its duties of good faith and fair dealing through its conduct in the handling of and settlement negotiations concerning Monarch's claim."  *Id.*, ¶ 89.

Kinsale argues that Acuity has not adequately pled a claim of common law bad faith because Kinsale's duty to act reasonably is a duty that applies only to Monarch. Docket No. 12 at 7; *see also* Docket No. 3 at 14, ¶ 88 ("Kinsale owed duties . . . of good faith and fair dealing . . . to Monarch").  Kinsale states that an "insurance contract imposes a 'quasi-fiduciary' relationship between the insurer and insured that imposes an implied covenant of good faith upon the insurer" and that this "special relationship gives rise to a separate action in tort when the insurer breaches its duty of good faith and fair dealing."  Docket No. 12 at 7 (quoting *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 342 (Colo. 2004)).  Kinsale asserts that, "[i]n this case, there is no special relationship between Kinsale and Acuity involved[;] therefore there cannot be any breach of the common law covenant of good faith and fair dealing."  *Id.*  This is true,

12

Kinsale maintains, regardless of whether Acuity is bringing a first-party or third-party bad faith claim because "the insurer's obligations are only ever to its insured." *Id.* at 7–8 ("As Acuity is not part of an insurer-insured relationship with Kinsale, it is not entitled to bring either a first- or third-party bad faith claim against Kinsale and accordingly, its claim for common law bad faith must fail as a matter of law.").

Acuity responds that Kinsale's arguments (1) "ignore[ ] Acuity's third-party beneficiary status and (2) Colorado law clearly establishes unique obligations between joint insurers of a mutual insured." Docket No. 24 at 11.

"Every insurer owes its insured a non-delegable duty of good faith and fair dealing." *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo. 2003). Because "[i]nsurance contracts are not ordinary commercial contracts" and "because of the 'special nature of the insurance contract and the relationship which exists between the insurer and the insured,' an insurer's breach of this duty gives rise to a separate cause of action sounding in tort." *Id.* The special relationship exists because "the motivation of the insured when entering into an insurance contract differs from that of parties entering into an ordinary commercial contract. By obtaining insurance, an insured seeks to obtain some measure of financial security and protection against calamity, rather than to secure commercial advantage." *Farmers Grp., Inc. v. Trimble*, 691 P.2d 1138, 1141 (Colo. 1984) (citation omitted). "The refusal of the insurer to pay valid claims without justification, however, defeats the expectations of the insured and the purpose of the insurance contract." *Id.*

Acuity has cited no authority for the proposition that an insurer, through its status as a third-party beneficiary, may bring bad faith claims against that co-insurer or for the

proposition that co-insurers owe a duty of good faith and fair dealing to each other. *See*

Docket No. 24 at 11. Rather, Acuity cites *Burlington N. R. Co. v. Stone Container*

*Corp.*, 934 P.2d 902, 907 (Colo. App. 1997), and *D.R. Horton, Inc.-Denver v. Travelers*

*Indem. Co. of Am.*, No. 10-cv-02826-WJM-KMT, 2012 WL 5363370, at *2 (D. Colo. Oct.

31, 2012), for the proposition that "Colorado law establishes unique obligations between

joint insurers of a mutual insured." Docket No. 24 at 11. *Burlington* is inapplicable to

Acuity's bad faith claim. In that case, the court considered only what "procedure to

follow in determining the extent of an indemnitor's liability when, as here, an indemnitee

has settled two or more claims with a third party in good faith and reasonably and the

indemnitor's liability extends only to the first of those claims." *Burlington*, 934 P.2d at

907. Acuity does not bring a claim for indemnification, and Kinsale is not seeking to

dismiss Acuity's claim for contribution. The case has no bearing on whether Acuity can

bring a bad faith claim against Kinsale for Kinsale's breach of its insurance contract with

Monarch. *Horton* is also inapplicable. In *Horton*, the court held that "there is sufficient

authority indicating that, if the Colorado Supreme Court were to address the issue, it

would hold that each liability insurer has a duty to provide a complete defense, such that

a liability insurer who breaches this duty can be found liable for the entire amount of

defense fees and costs (and that insurer can then seek equitable contribution from any

co-insurers)." *Horton*, 2012 WL 5363370, at *8. In that case, the plaintiff, a general

contractor for a construction project, did not bring a bad faith claim against the

defendant insurer. *See*, *id.* at *1, 6–11. Moreover, Kinsale is not seeking to dismiss

Acuity's contribution claim; it is seeking to dismiss Acuity's bad faith claim. Neither of

these cases demonstrates that Kinsale owes Acuity a duty of good faith. Instead,

Kinsale owed a duty of good faith to Monarch, and Kinsale's breach of this duty was a tort against Monarch.  *Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 571 (Colo. App. 2003) ("Claims for bad faith breach and willful and wanton breach of an insurance contract sound in tort.  These claims exist independently of the liability imposed by an insurance contract.").  Because there was no insurance contract between Kinsale and Acuity, and the common law duty of good faith arises from the existence of an insurance contract between the parties, Acuity has no bad faith claim against Kinsale.

Finally, Acuity's argument that all the "surrounding circumstances" to Monarch's policy with Kinsale show that Acuity is a third-party beneficiary of the Kinsale policy, Docket No. 24 at 7, is insufficient to show that Monarch and Kinsale ever intended Acuity to be a beneficiary of the policy.  *Parrish Chiropractic Centers, P.C. v. Progressive Cas. Ins. Co.*, 874 P.2d 1049, 1052 (Colo. 1994) ("Parrish was not a third-party beneficiary of the insurance contract between Progressive and its insureds because the policies contain absolutely no expression of intent to confer any benefit upon Parrish." (quotations omitted)).  Rather, as Kinsale points out, Acuity demonstrates only that the Kinsale policy had terms that might be indirectly beneficial to Monarch's co-insurers.  *See* Docket No. 24 at 7–8.  As such, the Court finds that Acuity was not a third-party beneficiary of Kinsale policy with Monarch.  Accordingly, because Acuity has failed to show that it may bring Monarch's common law bad faith claim against Kinsale, the Court will dismiss Acuity's claim for common law bad faith.

### C.  Statutory Bad Faith

Kinsale asserts that Acuity's statutory bad faith claim should be dismissed. Docket No. 12 at 8–9.  Colorado law provides that, a "person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed

to or on behalf of any first-party claimant."  Colo. Rev. Stat. § 10-3-1115(1)(a).  Kinsale maintains that Acuity's statutory bad faith claim must be brought by a first-party claimant, which the statute defines as "an individual, corporation, association, partnership, or other legal entity asserting an entitlement to benefits owed directly to or on behalf of an insured under an insurance policy."  Docket No. 12 at 8 (quoting Colo. Rev. Stat. § 10-3-1115(b)(I) (emphasis omitted)).  Kinsale claims that, because Acuity is seeking to recover money it paid pursuant to the Acuity policy, Acuity brings its statutory bad faith claim on its own behalf and that Acuity is, therefore, not a first-party claimant. *Id.*

Acuity responds that it can bring a statutory bad faith claim because it is both a third-party beneficiary and an assignee of Monarch's claims against Kinsale.  Docket No. 24 at 12.  The Court disagrees.  First, the Court has determined that Acuity is not a third-party beneficiary of the Kinsale policy.  Second, subsection 2 of section J applies only to "payment we have made," *id.*, and Acuity did not pay Phipps to settle a bad faith claim Phipps had against Monarch.  *See* Docket No. 3 at 3, ¶ 13.  Therefore, the transfer of rights provision in the Acuity policy is inapplicable to Acuity's statutory bad faith claim.  As such, Acuity's arguments regarding its status as an assignee and third-party beneficiary fail.

Acuity argues that, regardless of its status as an assignee and third-party beneficiary, it is subrogated to Monarch's claims against Kinsale and, therefore, may sue Kinsale for statutory bad faith.  Docket No. 24 at 12–13.  The fact that Acuity is subrogated to claims Monarch may have against Kinsale to recover for the payment Acuity made to Phipps does not mean that Acuity can pursue any bad faith claim

Monarch may have against Kinsale.  Phipps did not assert statutory bad faith claims against Monarch, and Acuity did not pay Phipps to settle bad faith claims against Monarch.  Docket No. 3 at 3, ¶ 13 ("Phipps asserted causes of action for negligence, breach of contract, breach of express warranty, contribution and 'defense, indemnity, and hold harmless.'").  Pursuant to Acuity's insurance policy with Monarch, Acuity is only entitled to Monarch's rights to recover payment made by Acuity on the claims brought against Monarch by Phipps.  *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 833 (Colo. 2004) ("Subrogation is defined as the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor *in relation to the debt*." (internal quotations and citation omitted) (emphasis added)).  Accordingly, the Court finds that Acuity may not bring Monarch's statutory bad faith claim against Kinsale and will grant that part of Kinsale's motion seeking dismissal of Acuity's statutory bad faith claim.

### D.  Declaratory Judgment

Acuity's first claim for relief seeks a declaratory judgment, pursuant to Colo. Rev. Stat. § 13-51-101, that Kinsale is obligated to pay contribution to Acuity.  *See* Docket No. 3 at 9, ¶ 52.  Kinsale argues that the Court should dismiss Acuity's request for declaratory relief because it is not independent of or separable from the other claims asserted in this action.  *See* Docket No. 12 at 3.  Kinsale maintains that "the declaratory relief claim relates to the insurers' obligations under the various policies with respect to indemnity payments made to settle the underlying lawsuit" and that, "[s]ince the contribution claim will resolve the same issues raised by the declaratory relief claim, the latter is duplicative."  *Id.* at 3–4.

Because declaratory judgment acts are procedural rules, "federal law determines whether a district court may properly enter a declaratory judgment" in a diversity case. *Addison Ins. Co. v. Maynard*, 08-cv-00054-WDM-BNB, 2008 WL 2079143, at *2 (D. Colo. May 15, 2008).  The federal Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201. "[T]he question of whether this power should be exercised in a particular case is vested in the sound discretion of the district courts."  *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1168 (10th Cir. 1995).

The Tenth Circuit has identified five factors ("*Mhoon* factors") a district court should consider in determining whether to exercise its discretion to hear a declaratory judgment action:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata*"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Id.* at 1169 (quoting *State Farm & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994)).  Courts in this district have additionally looked to a sixth factor set forth in *Constitution Associates v. New Hampshire Insurance Co.*, 930 P.2d 556 (Colo. 1997) – whether the declaratory judgment action is "independent of and separable from the underlying action."  *Constitution Assocs.*, 930 P.2d at 561; *see, e.g.*, *Ace Am. Ins. Co. v. Dish Network, LLC*, No. 13-cv-00560-REB-MEH, 2014 WL 811993, at *16 (D. Colo.

Mar. 3, 2014) (finding analysis in *Constitution Associates* "instructive and in accord with an analysis of the *Mhoon* factors"); *Maynard*, 2008 WL 2079143, at *2–3 (applying "independent and separable" factor from *Constitution Associates* in determining whether to hear declaratory judgment action); *see also Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1093–94 (10th Cir. 2010) (declining to decide whether "state law rule purporting to prevent parties from seeking a declaratory judgment until a specified time could bind a federal district court," but citing with approval holding in *Constitution Associates* that "a declaratory judgment action is permissible if it concerns issues that are independent of and separable from those in the underlying action" (internal quotation marks, citation, and emphasis omitted)).

Courts have typically applied the factors listed above to decline jurisdiction over declaratory judgment claims in situations that are unlike this case, for instance, where there is parallel litigation in state and federal courts, *see Golf Club, L.L.C. v. Am. Golf Corp.*, 2017 WL 1655259, at *2 (W.D. Okla. May 2, 2017), or where resolution of the declaratory judgment claim would prejudice an insured in an underlying liability action by a third party.  *See Valley Forge Ins. Co.*, 616 F.3d at 1094 (stating that "declaratory judgment action *is* permissible if it concerns issues that are independent of and separable from those in the underlying action, because . . . it then would not unduly prejudice the insured in the underlying action" (internal quotation marks and citation omitted)).  However, courts in this circuit have also dismissed declaratory judgment claims in circumstances similar to those presented here – where a plaintiff seeks declaratory relief that would resolve the same issues raised by other claims brought in the same action.  *See*, *e.g.*, *Golf Club, L.L.C.*, 2017 WL 1655259, at *2 (finding that

*Mhoon* factors weighed in favor of dismissal where "plaintiff fail[ed] to identify any issue for resolution by declaratory relief that [could not] be resolved in the context of its separate claim for breach of contract"); *PDX Pro Co., Inc. v. Dish Network, LLC*, No. 12-cv-01699-RBJ, 2013 WL 3296539, at *2 (D. Colo. July 1, 2013) (dismissing declaratory judgment claim on ground that there was no "forward-looking need to resolve the damages" issue raised in that claim because it would be "resolved in deciding plaintiff's allegations of breach of contract and duty of good faith and fair dealing"); *Cleveland v. Talent Sport, Inc.*, 2013 WL 2178272, at *3 (W.D. Okla. May 17, 2013) (dismissing declaratory judgment claim without prejudice on ground that it "serve[d] no useful purpose" because "all issues identified for resolution by declaratory judgment [would] be decided in adjudicating [plaintiff's] other claims").

The holdings in these cases have rested on one of two rationales.  Some courts have assumed that the *Mhoon* factors "may . . . guide a decision whether to entertain a separate declaratory judgment claim," even in the absence of pending litigation in state court.  *Golf Club, L.L.C.*, 2017 WL 1655259, at *2; *Cleveland*, 2013 WL 2178272, at *3. Applying those factors, the courts have determined that a declaratory judgment claim "serves no useful purpose" where it raises issues that will necessarily be resolved in the context of other claims asserted in the same action.  *Golf Club, L.L.C.*, 2017 WL 1655259, at *2; *Cleveland*, 2013 WL 2178272, at *3.  Other courts have reached a similar conclusion without relying on the *Mhoon* factors.  In *PDX Pro Co.*, for example, the court determined that dismissal of the plaintiff's declaratory judgment claim was appropriate where the alleged breach of contract had already occurred and the damages issue raised by the declaratory judgment claim would necessarily be

addressed by the resolution of the plaintiff's breach of contract allegations.  2013 WL 3296539, at *2.  The court reasoned that, under the circumstances, there was no "forward-looking need" to address the damages issue through a declaratory judgment. *Id.*

The Court finds both of these rationales persuasive.  Assuming the *Mhoon* factors apply in cases such as this where there is no pending state court litigation, the Court finds that the first, second, and fifth factors weigh in favor of dismissal.[7]  Although a declaration that Acuity is entitled to contribution from Kinsale fully resolves Acuity's contribution claim, it is not clear that it would entirely resolve Acuity's breach of contract claim.  It is also not clear that a separate adjudication of Acuity's claim for declaratory relief would serve any useful purpose.  The question of whether Acuity is entitled to contribution will necessarily be addressed in the Court's resolution of Acuity's contribution claim; and the question of whether Acuity may recover payments it made on behalf of Monarch that were owed by Kinsale under the Kinsale policy will be addressed through Acuity's breach of contract claim.  *See Golf Club, L.L.C.*, 2017 WL 1655259, at *2.  Finally, Acuity's claims seeking money damages and equitable contribution provide a more complete remedy than a mere declaration that Acuity is entitled to contribution.

However, even if the *Mhoon* factors do not apply, the Court agrees with the rationale in *PDX Pro Co.*  As the Tenth Circuit has noted, the Declaratory Judgment Act "enables parties uncertain of their legal rights to seek a declaration of rights prior to

---

[7] The second and third factors appear to be inapplicable in this case because the Court is unaware of pending litigation in any other forum.

injury." *Kunkel v. Continental Cas. Co.*, 866 F.2d 1269, 1274 (10th Cir. 1989).  That purpose is not served where, as here, the injury has already occurred and the declaratory judgment claim seeks relief that will be afforded by the resolution of Acuity's claims for breach of contract and contribution.  *See PDX Pro Co.*, 2013 WL 3296539, at *2.

In short, the Court discerns no reason – and Acuity offers none – for issuing a declaratory judgment when its entitlement to contribution from Kinsale will necessarily be resolved in the context of Acuity's other claims.  Accordingly, the Court will grant that part of Kinsale's motion seeking dismissal of Acuity's declaratory judgment claim.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Kinsale Insurance Company's Partial Motion to Dismiss [Docket No. 12] is **GRANTED in part** and **DENIED in part**.  It is further

**ORDERED** that plaintiff's first, fourth, and fifth claims are **DISMISSED with prejudice**.


DATED September 27, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge